**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

| | |
|---|---|
| ADOLFO RAMIREZ | *<br>* |
| Plaintiff | *<br>* |
| VS. | *<br>*   NO: 1:03CV00053  SWW |
| GENCORP, INC., doing business as GDX Automotive | *<br>*<br>* |
| Defendant | *<br>*<br>* |

**ORDER**

Plaintiff Adolfo Ramirez ("Ramirez") brings this employment discrimination lawsuit pursuant to Title VII of the 1964 Civil Rights Act, as amended by the Civil Rights Act of 1991, claiming that his former employer, GDX Automotive ("GDX"), terminated his employment based on his national origin.  Ramirez also alleges a supplemental breach of contract claim pursuant to state law.

Before the Court is GDX's motion for summary judgment (docket entries #31, #32, #33), Ramirez's response (docket entries #36, #37, #38, #39), and GDX's reply (docket entry #40). After careful consideration, and for the reasons that follow, the motion for summary judgment will be granted, and Ramirez's contract claim will be dismissed, without prejudice, pursuant to 28 U.S.C. § 1367(c)(3).

**I.  Background**

1

Unless stated otherwise, the following facts are undisputed. Ramirez, an Hispanic American citizen, began working for GDX in January 1989 at a plant in Batesville, Arkansas, where GDX manufactures automotive sealing systems for several automobile manufacturers. GDX terminated Ramirez's employment in March 2003. During his fourteen years with GDX, Ramirez received several promotions, and in 1994, he received a promotion to production supervisor of GDX's mixing and extrusion (M&E) department. During Ramirez's tenure as a production supervisor, Scott Conger ("Conger"), the M&E small business unit ("SBU") manager headed the M&E department, and Don Mills, the M&E area manager, served as Ramirez's direct supervisor.

In January 2003, Conger became the operations manager for the entire Blytheville plant; Mills replaced Conger as the M&E SBU manager; and Mills recommended Ramirez as his replacement for the M&E area manager position. Conger promoted Ramirez to area manager, and on January 7, 2003, Ramirez and Conger signed the following agreement:

> Beginning January 2, 2003, GDX . . . is happy to offer you the position of a Department Manager Extruding/mixing.
>
> In your new responsibility, you will be given a ninety (90) day evaluation period to give both you and the Company the opportunity to determine if you want to remain as Department Manager or return to your old position as Supervisor. At the end of the 90 day period the Company will sit down with you to determine your desire and success in your new position. At that time if your performance is at the acceptable level for this position, a pay increase will be given. Your wage will increase to $3,832.60 per month and paid in semi monthly payments as your current salary is paid. This increase will be retroactive back to the beginning date of the promotion which would be January 2, 2003.
>
> Your signature below signifies that you have read this agreement and understand and agree to the terms set forth in it.

Docket entry #31, Ex. A.

GDX asserts that immediately after Ramirez's promotion to area manager, his job performance declined dramatically.  According to affidavits submitted by Conger and Mills, Ramirez fought with Mills about changes that Mills sought to implement in the M&E department, and he sought to please his subordinates, who were his friends, instead of following the direction of his supervisors.  *See* docket entry #31, Exs. A, C.  Ramirez claims that "the job was getting done" but Conger and Mills wanted him to be a "hatchet person, terminating employees for fraudulent reasons in violation of the union contract procedure."  Docket entry #39, ¶ 30.  According to Ramirez's deposition testimony, he wanted to manage with positive discipline, not threats and fear tactics, and his method of managing employees did not conform to what Conger and Mills desired of him.  Docket entry #36, Ex. D at 39-40.

In mid February 2003, Ramirez concluded that he was not "cut out" for the area manager position, and he told Mills that he wanted to return to his production supervisor position.  According to Ramirez, Mills replied, "Amigo, you can do this job."  Docket entry #36, ¶ 48.

It is undisputed that from 2001 to 2003, GDX suffered a decline in business, which necessitated a substantial reduction in GDX's workforce.  In March 2003, Conger eliminated several management positions, including Ramirez's area manager position, because of continued economic downturn.  When Conger made the decision to eliminate the area manager position, there were three production supervisor positions in the M&E department, occupied by employees who were performing satisfactorily.  Rather than return Ramirez to a production supervisor position and displace an existing production supervisor, Conger terminated Ramirez's employment.

After his termination, Ramirez filed this lawsuit, claiming that GDX terminated his employment based on his national origin, in violation of Title VII. Ramirez also claims that GDX breached the January 7, 2003 agreement, in violation of state contract law, by refusing his request to return a production supervisor position.

## II.  Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

## III.  Discussion

**Wrongful Termination**

Ramirez contends that he has direct evidence that GDX terminated his employment based on his national origin. Specifically, he claims that Mills made remarks that were disparaging to Hispanics, which provide a "direct nexus" between his termination and national origin.

Direct evidence of discrimination includes "conduct or statements by persons involved in making the employment decision directly manifesting a discriminatory attitude, of a sufficient quantum and gravity that would allow the factfinder to conclude that attitude more than likely not was a motivating factor in the employment decision.'" *E.E.O.C. v. Liberal R-II School Dist.*, 314 F.3d 920, 923 (8th Cir. 2002)(quoting *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 724 (8th Cir. 2001)). Additionally, there must be evidence "showing a specific link between the discriminatory animus and the challenged decision." *Id.* (quoting *Stacks v. Southwestern Bell Yellow Pages, Inc.*, 996 F.2d 200, 202 n.1 (8thCir. 1993)).

Ramirez claims that Mills called him "amigo" and, in a facetious way, asked him for his green card. Ramirez provides no evidence indicating that Mills used the word "amigo", the Spanish word for friend, in a derogatory manner. Additionally, Ramirez provides no evidence specifically linking Mills' remarks to the decisional process that lead to his termination.[1] In fact, the timing of Mills' green card remarks indicates that they were not reflective of a discriminatory attitude. In his deposition, Ramirez testified that the last time Mills asked him for his green card occurred during a staff meeting when Mills served as area manager, before Mills recommended

---

[1]This is not a case in which the decisionmaker's statements are plainly related to the specific decisional process at issue. *See Gagnon v. Sprint Corp.*, 284 F.3d 839 (8th Cir. 2002)(finding direct evidence race discrimination in compensation decision where vice president stated he would not pay employee a certain amount because "he's just a white guy"); *Simmons v. New Public School Dist. No. Eight*, 251 F.3d 1210 (8th Cir. 2001)(finding direct evidence of gender discriminatory in contract renewal decision when school board president stated "a woman can't handle" the job).

that Ramirez be promoted to the area manager position.  *See* docket entry #36, Ex. D. at 34.

Because Ramirez lacks evidence that clearly points to the presence of an illegal motive for his termination, "he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext."  *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004).

Under the three-stage order of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972), Ramirez must first establish a prima facie case of age discrimination.  If Ramirez establishes a prima facie case, GDX must articulate a legitimate, nondiscriminatory reason for terminating him.  *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1332 (8th Cir. 1996).  Finally, the burden shifts back to Ramirez to show that the proffered reasons are pretextual and that his national origin was the real reason for his termination.

GDX asserts that Ramirez cannot prevail on his discrimination claim because, even if he could establish a prima facie case of discrimination, he is unable to establish a triable issue of pretext.  To make the showing of pretext necessary to survive summary judgment, Ramirez must (1) discredit GDX's asserted reasons for terminating him and (2) show that the circumstances permit a reasonable inference that his national origin was the real reason for his termination.  *Johnson v. AT & T Corp.*, 2005 WL 2138808, at *5 (8th Cir. Sept. 7, 2005)(citation omitted).

GDX has articulated a legitimate reason for terminating Ramirez's employment:   a reduction in force coupled with poor job performance.  GDX maintains that Ramirez performed poorly as an area manager, failed to support management's goals, and refused to take directions from Mills.  According to GDX, Ramirez's refusal to support company goals  "weighted heavily against retaining Ramirez as a supervisor during this critical period of business decline, in which

cooperation with management and support for management goals, as opposed to conflict and confrontation, was mandatory." Docket entry #37, at 8.

Ramirez does not dispute that his termination occurred as part of a reduction in force necessitated by a business downturn, and he acknowledges that he disagreed with Mills' instruction and declined to follow his lead. However, Ramirez defends his conduct by claiming that he simply refused to act as Mills' and Conger's "hatchet man." Ramirez maintains that Mills' and Conger's business decisions and management styles were unsound, but he provides no evidence indicating that the proffered reasons for his termination are pretended or unworthy of credence.

Ramirez asserts that it is obvious that GDX terminated him based on his national origin for several reasons. First, Ramirez argues that he had more seniority and experience than the production supervisors that GDX retained. However, he provides no evidence showing that he was similarly situated to the production supervisors who remained employed after the March 2003 reduction in force. *See Hesse v. Avis Rent-A-Car System, Inc.*, 394 F.3d 624, 631 (8th Cir. 2005)(holding that plaintiff failed to meet her prima facie burden on discriminatory termination and failure to recall claims because she presented no evidence that she was similarly situated to male employees who were retained or recalled). In fact, Ramirez acknowledges that when GDX selected him for termination, the existing production supervisors were performing their jobs satisfactorily. *See* docket entry #39, ¶ 50. Additionally, although Ramirez disagrees with Mills' and Conger's assessment of his performance as area manager, he does not dispute that they regarded his performance unsatisfactory.

Second, Ramirez points to Conger's failure to promote him in 2002 as evidence that his

termination was based on his national origin.  In late 2001, Conger interviewed Ramirez for a promotion to the position of Engineer I.  According to Ramirez, Conger indicated to him that he would receive the promotion, but he awarded the job to Robin Bowren, a Caucasian male.

Conger states that he decided against promoting Ramirez in 2002 because, on December 9, 2001, Ramirez received disciplinary action for falsifying his time card.  *See* docket entry #31, Ex. A, ¶17; Ex. H.  Ramirez denies that he falsified his time record.  He claims that a disgruntled employee, who he had disciplined, made a false report that he had misrepresented his time worked.  However, Ramirez offers no evidence showing that Conger's stated reason for failing to promote him in 2002 is pretext for discrimination.

Third, Ramirez points to Mills' "amigo" and green card remarks as evidence that Conger terminated him because of his national origin.  For the reasons previously stated, the Court disagrees that Mills' remarks, without more, permit a reasonable inference that discrimination was the real motivation behind Ramirez's termination.

The Court concludes that Ramirez has failed to establish a triable issue of pretext and that GDX is entitled to summary judgment.

**Breach of Contract**

Ramirez's breach of contract claim is distinct from his discrimination claim.  He acknowledges that GDX made similar agreements with other employees it promoted, and he does not claim that GDX's alleged failure to adhere to the agreement amounts to evidence of discrimination.  Having dismissed Ramirez's discrimination claim, the only claim over which the Court has original jurisdiction, the Court will dismiss his supplemental breach of contract claim, without prejudice.  *See* 28 U.S.C. § 1367(c)(3).

## IV.  Conclusion

IT IS THEREFORE ORDERED that Defendant's motion for summary judgment (docket entry #31) is GRANTED.  Pursuant to the judgment entered together with this order, Plaintiff's claims brought pursuant to Title VII of the 1964 Civil Rights Act, as amended by the Civil Rights Act of 1991, are DISMISSED WITH PREJUDICE.  Plaintiff's claims brought pursuant to state law are DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367(c)(3).

IT IS SO ORDERED THIS 15th  DAY OF SEPTEMBER,  2005.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE